## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GROHS,<br><br>                Petitioner,<br><br>    v.<br><br>MERRILL MAIN, Ph.D., Clinical<br>Director Of The Special<br>Treatment Unit and GURBIR<br>GREWAL, Attorney General Of<br>The State Of New Jersey,<br><br>                Respondents. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 14-5268 (JBS)<br><br><br>**OPINION** |

**APPEARANCES:**
Steven Grohs, Pro Se
594, Special Treatment Unit, Main-SO
P.O. Box 905
Avenel, New Jersey 07001-0905

Gurbir Grewal, Attorney General
David L. DaCosta, Deputy Attorney General
R.J. Hughes Justice Complex
Office of the New Jersey Attorney General
N.J. Department of Law and Public Safety
Division of Law, Health & Human Services Section
25 Market Street, P.O. Box 112
Trenton, NJ 08625
    Attorneys for Respondents

**SIMANDLE, District Judge:**

I.   <u>INTRODUCTION</u>

    Steven Grohs ("Grohs") has submitted an amended petition

("Amended Petition") for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. (ECF[1] 3.) Respondents Merrill Main, Ph.D. and John J. Hoffman oppose the Amended Petition.[2] (Answer, ECF 9-1.) For the reasons stated herein, the Amended Petition shall be denied and no certificate of appealability shall issue.

## II.  BACKGROUND

Grohs has a history of child sex crimes, computer pornography and child exploitation, lewd assault, and related offenses throughout the period 1990 to 2009. (ECF 3-1 at 4; ECF 9-4 at 24-25.)

On February 22, 2011, the State of New Jersey ("State") filed a Petition for Civil Commitment of Grohs ("Commitment Petition"), with a supporting probable cause certification (ECF 9-4 at 21-28 and 33-36), under New Jersey's Sexually Violent Predator Act, N.J. Stat. Ann. § 30:4-27.24 to -.38 ("SVPA"). The

---

[1] The notation "ECF" as used in this Opinion refers to the numbered docket entries for this case.

[2] Pursuant to 28 U.S.C. § 2242, an application for writ of habeas corpus "shall name the person who has custody over [the petitioner]." The Response to Grohs' Amended Petition argues that Merrill Main, Ph.D. (a Department of Human Services official) and John Hoffman (Acting Attorney General) should be dismissed as parties because neither individual has custody over Grohs. (ECF 9-1 at 14-15.) The Order accompanying this Opinion directs the Clerk of Court to correct the docket of this case accordingly as to Dr. Main. (The § 2254 habeas petition form does require Grohs to identify the Attorney General of New Jersey, who in this case was Mr. Hoffman.) (ECF 3 at 1.) The new Attorney General is Gurbir Grewal, who will be substituted as a Respondent pursuant to Rule 25, Fed. R. Civ. P., in place of John Hoffman.

Commitment Petition requested "that Grohs be declared a sexually violent predator and that, pursuant to N.J. Stat. Ann. § 30:4-27.28, Grohs be committed to the custody of the State of New Jersey Special Treatment Unit (STU), until such time as his condition has so changed that he is no longer a danger to society and is not likely to engage in acts of sexual violence if released." (ECF 9-4 at 25.)

The Deputy Attorney General's February 23, 2011 cover letter to the trial court clerk enclosing the Commitment Petition stated: "Pursuant to the Appellate Division in *In re the Commitments of M.G. and D.C.*, 331 N.J. Super. 365 (App. Div. 2000), the Office of the Public Defender has been served with a copy of the Petition and supporting Clinical Certificates. Please have the judge reserve decision for seven days in order to provide the Public Advocate an opportunity to contest whether the State has established probable cause." (ECF 10 at 20-21.)

On February 23, 2011, the State served the Commitment Petition on the Office of the Public Defender via overnight mail. (ECF 9-4 at 37-38.)

Judge Richard J. Geiger signed an Order For Temporary Civil Commitment ("the TCO") (ECF 9-4 at 29-32; ECF 9-3 at 5-6) on February 24, 2011 -- i.e., two days after the State filed the February 22 Commitment Petition. (*Id.*) The TCO provided:

> [I]t appearing to the Court from the
> Petition for involuntary civil commitment,
> Certifications and Clinical Certificates
> filed herein that . . . there is probable
> cause to believe that [Steven Grohs] suffers
> from a mental abnormality or personality
> disorder that makes him likely to engage in
> acts of sexual violence if not confined to a
> secure facility for control, care and
> treatment, and good cause having been shown,
>
> IT IS on this 24th day of February, 2011 ...
>
> ORDERED that Steven Grohs be and hereby is
> temporarily committed to the State of New
> Jersey Special Treatment Unit ... ; and it
> is ...
>
> FURTHER ORDERED that at least 10 days prior
> to the date set for the final hearing in
> this matter, [the State Attorney General]
> shall cause notice of the hearing to be
> served upon Steven Grohs; Office of the
> Public Defender; Next of kin; [and]
> Southwoods State Prison.

(ECF 9-4 at 29-32.)

Grohs was housed in Southwoods State Prison at time of his temporary commitment. (ECF 3-1 at 15.)

In May 2012, Grohs filed a Motion to Dismiss the State's Commitment Petition ("the MTD"), arguing that the TCO was entered prematurely in violation of Due Process. (ECF 9-3 at 2-7; ECF 9-5 at 49-54.) In his May 22, 2012 Certification in support of the MTD, the public defender stated that Grohs had been in custody of the STU -- "the secure custodial facility for treatment of persons in need of commitment under the [SVPA]" -- since March 3, 2011. Grohs' counsel argued that the Commitment

Petition was "null and void because the temporary commitment court failed to afford Grohs an opportunity to be heard within the seven day rule" in violation of Due Process. (ECF 9-5 at 52-54.) Grohs' counsel further argued that he had waived his 20-day commitment hearing "because he currently has pending a post-conviction relief petition to withdraw his guilt[y] [plea][,] [and such waiver does not] preclude him from raising this [Due Process] issue at this time." (*Id.* at 53-54.)

On May 25, 2012, Grohs appeared with counsel before Judge Philip M. Freedman ("Judge Freedman") of the Law Division of the Superior Court of New Jersey (ECF 9-3 at 9-16) because Grohs' counsel had sought[3] a hearing "concerning the fact that [Grohs] doesn't want to have to go to treatment [in STU] and talk about his crimes." (ECF 9-3 at 10.) On the May 25th record, the court referred to the STU "rule indicating that he's got to go to process group" and to the court's prior adjudication of a case analogous to Grohs' "that was resolved on the basis of the individual going to process group and just not discussing his particular crimes." (*Id.* at 10.) Judge Freedman suggested to Grohs that "even if you don't talk about your own [situation],

---

[3] The request was made in a letter from the public defender to Judge Freedman dated the same day as the May 25 hearing, which stated: "Mr. [G] would like to come before you and request that he be allowed to remain in the treatment orientation group without losing his ability to work for pay." (ECF 9-5 at 62.)

you hear other people [in process group] talking and you can learn things there." (*Id*. at 11.) Grohs' counsel confirmed on the record that he had raised this point with his client, but Grohs was "not amenable to that. He just feels that he could damage the posture of his appeals" -- the likelihood of which Judge Freedman questioned. (*Id*. at 11.)

Judge Freedman referred to the court's hesitation to "interfer[e] with the operations of th[e] [STU] institution unless it's, you know, something that really rises to the level of a constitutional issue" (*id*. at 11), especially since the STU had given Grohs "a reasonable alternative, which is just to go and listen." (*Id*.) Nevertheless, Grohs persisted in concerns of being "subjected to problems with other residents, which could jeopardize my safety and possibl[y] my release from this facility." (*Id*. at 12.) Judge Freedman left resolution of that matter open to a future hearing: "I don't intend to do it today. We'll have to have a hearing. Then I'll make a ruling." (*Id*.)

Judge Freedman then turned to Grohs' MTD argument that his failure to receive seven days' notice from the State was "fatally defective to the [Commitment] [P]etition." (*Id*. at 12.) The State argued at the May 25 hearing that "any 'early' signing of the [TCO] should be absolutely immaterial" because "[a]t no time did Mr. Grohs ask for a probable cause hearing." (*Id*. at 13.) The court questioned the State's "immateriality" contention

because Judge Freedman said "the [SPVA] statute should [still] be complied with." (*Id*.) According to the court, the "[pertinent] question [instead] is, [does] a violation of it deliberately or inadvertently taint or make commitment improper." (*Id*. at 13.) Judge Freedman found that taint had not occurred because there was, in fact, probable cause to subject Grohs to civil commitment:

> I note there's nothing in this certification to indicate that there was any probable cause sought[,] [but] I reviewed the file and there's clearly probable cause.
>
> The case was on before the Court a number of times. On March 13th, Mr. Grohs waived his 20 day hearing on the record. And on August the 2nd, he waived his commitment hearing on the record, because of the fact that he had post conviction relief pending.
>
> [E]ven accepting for the sake of the motion that the facts stated in the certification of counsel are true, the failure to give seven days' notice does not rise to the level of a denial of procedural due process that would invalidate the civil commitment.
>
> There's clearly probable cause in this file. [I]t's not as if a request for probable cause was filed afterwards and it was denied by the judge. [N]o one ever asked for a probable cause hearing. And there's clearly probable cause.
>
> So, I'm going to deny the motion to dismiss.

(ECF 9-3 at 10-15; ECF 10 at 18-19.)

On June 14, 2012, Grohs filed a Notice of Appeal. (ECF 9-5 at 56-59.) On September 25, 2012, the Appellate Division dismissed for failure to prosecute the appeal. (ECF 9-5 at 61.)

On January 14, 2013, Grohs filed a Motion for Interlocutory Appeal of Judge Freedman's May 25, 2012 decisions not to consider Grohs' pro se motion challenging the factual accuracy of various statements in the Commitment Petition[4], to refuse to dismiss the TCO, and to refuse to consider the motion for excusal from treatment pending his PCR application. (ECF 9-3 at 26-29.) On February 26, 2013, the State filed its opposition to the Motion for Leave to Appeal. (ECF 9-6 at 2-17 and 39-54.) On March 11, 2013, the Appellate Division denied the Motion To Vacate Dismissal And Reinstate Appeal, denied the Motion To File Motion For Leave To Appeal As Within Time, and denied the Motion For Leave To Appeal. (ECF 9-6 at 19 and 38.)[5]

---

[4] Grohs' pro se motion argued that the certifications of Anasuya Salam, M.D. and Marina Moshkovich, M.D. in support of the Commitment Petition contained false information about his sexual misconduct history, and that they were therefore guilty of perjury ("Grohs' Pro Se Perjury Motion"). Grohs also contended that Deputy Attorney General, Cindi Collins, Esquire, had offered their certifications in support of the Commitment Petition, "[knowing] that both Certifications contained false information." (ECF 9-5 at 28-40.)

[5] This Court notes that the Amended Petition's habeas claims arising from denial of the MTD may be procedurally defaulted if the Appellate Division dismissed Grohs' appeal (ECF No. 9-6 at 38) without hearing his claims. Nevertheless, because the merits are "easily resolvable" in this habeas case, "[j]udicial economy" can be served via bypassing the procedural-default question and proceeding to decide Grohs' Amended Petition on the

In July 2013, Grohs petitioned the New Jersey Supreme Court

for certification of an interlocutory appeal. (ECF 9-6 at 29-

31.) Later that same month, Grohs moved before New Jersey's

Supreme Court for Leave to File Notice of Petition and Petition

for Certification as Within Time. (ECF 9-6 at 21-28.)

On September 3, 2013, the State filed a letter brief

opposing Grohs' Motion Seeking Review of the Appellate

Division's May 12, 2013 Order Denying Motion for Leave to Appeal

Interlocutory Order of Trial Court. (ECF 9-6 at 33-38.)

On July 25, 2014, the New Jersey Supreme Court granted

Grohs' petition for certification and summarily remanded to the

trial court for reconsideration in light of *IMO the Civil*

*Commitment of D.Y.*, 95 A.3d 157 (N.J. 2014). (ECF 9-6 at 56.)[6]

---

merits. *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997); *Johnson
v. Lee*, 136 S. Ct. 1802, 1806 (2016); *Trest v. Cain,* 522 U.S.
87, 89 (1997).

[6] Grohs' petition for certification argued that his Due Process
rights were violated when the trial court refused to decide his
Pro Se Perjury Motion and held that his motion could only be
brought by and argued by trial counsel. (ECF 9-6 at 30.) The New
Jersey Supreme Court's remand issues as to Grohs' Pro Se Perjury
Motion are not raised in his Amended Petition for habeas. The
grounds raised in his Amended Petition for habeas are,
therefore, allegedly exhausted. *See* 28 U.S.C. § 2254 (a court
may not grant a writ of habeas corpus on a state court
conviction challenge unless the petitioner has "exhausted the
remedies available in the courts of the State" under §
2254(b)(1)(A) by fairly presenting each federal ground that is
raised in the petition to all levels of the state courts or
exhaustion is excused under ⌐          ⌐ § 2254(b)(1)(B)).

9

On August 22, 2014, Grohs filed with this Court his
Petition for habeas review under 28 U.S.C. § 2254. (ECF 1.) He
thereafter filed an Amended Petition on November 24, 2014 (ECF
3), which this Court on February 2, 2015 ordered Respondents to
answer. (ECF 6.) Respondents did so on May 19, 2015. (ECF 9.)

This Court now reviews the submissions of the parties and
denies the Amended Petition, for the reasons explained below.

## III. **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996
permits a federal court to entertain a petition for writ of
habeas corpus on behalf of a person in state custody, pursuant
to the judgment of a state court, "only on the ground that he is
in custody in violation of the Constitution or laws or treaties
of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a
state court, the writ shall not issue unless the adjudication of
the claim:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to"
Supreme Court precedent "if the state court applies a rule that

contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "[A] state-court decision is an unreasonable application of clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). Habeas courts must presume that state court factual findings are correct unless petitioners rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. <u>ANALYSIS</u>

Grohs raises the following points in Grounds One and Two of the Amended Petition for this Court's review:

I.  Ground One: "The trial court erred when it denied Grohs' Motion to Dismiss the State's Verified Petition for Commitment of S.G. because the requirements of Due Process were neither followed nor met." (ECF 3 at 6.)

II. Ground Two: "The trial court erred when it denied Grohs' Motion to not be compelled by the State to attend sex offender specific therapy because no adjudication was made whether Grohs fits the criterion for commitment." (*Id.* at 8.)

The Court now addresses these points in turn:

**A. Ground One: Grohs' Challenge To The Trial Court's Dismissal Of His Motion To Dismiss The Commitment Petition**

Citing N.J. Stat. Ann. § 30:4-27.28(c)[7], (f)[8], (g)[9] of the SVPA, Grohs argues that "[u]nder the due process doctrine the State should have given Grohs an opportunity to contest the validity of the two certificates [supporting the Commitment Petition] ... and before [the TCO] was entered." (*Id*. at 15.)

In his Pro Se Brief, Grohs contends that *In the Matter of Commitments of M.G. and D.C.*, 751 A.2d 1101 (N.J. Super. App. Div. 2000) ("*M.G.*") and *In the Matter of Civil Commitment of T.J.T.*, No. A-5003-06, 2008 WL 313902 (N.J. Super. Ct. App. Div. Feb. 6, 2008) ("*T.J.T.*") support his Due Process deprivation

---

[7] "The Attorney General may initiate a court proceeding for involuntary commitment under this act of an inmate who is scheduled for release upon expiration of a maximum term of incarceration by submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist." N.J. Stat. Ann. § 30:4-27.28(c).

[8] "Upon receiving these documents, the court shall immediately review them in order to determine whether there is probable cause to believe that the person is a sexually violent predator." N.J. Stat. Ann. § 30:4-27.28(f).

[9] "If the court finds that there is probable cause to believe that the person is a sexually violent predator in need of involuntary commitment, it shall issue an order setting a date for a final hearing and authorizing temporary commitment to a secure facility designated for the custody, care and treatment of sexually violent predators pending the final hearing. In no event shall the person be released from confinement prior to the final hearing." N.J. Stat. Ann. § 30:4-27.28(g).

claim. He states that the February 24, 2011 TCO directed the State to provide him with "notice ... of the final hearing ... at least 10 days prior" (ECF 9-4 at 31), but "[n]one of it was done." (ECF 3-1 at 16-18.) *M.G.* ruled that the committee therein should have been given seven days' notice within which to contest probable cause (751 A.2d at 1108-09), but *T.J.T.* ruled that no such notice was required under its particular facts. Grohs also claims that "[f]ollowing the decision reached by the Supreme Court in *Vitek [v. Jones*, 445 U.S. 480 (1980)], it is clear that, absent some emergency justifying a post-deprivation hearing, due process requires notice prior to even a temporary involuntary commitment." (ECF 3-1 at 16.)

Grohs' reasoning is fatally flawed because denial of the MTD was not contrary to, nor an unreasonable application of, clearly established federal law. *Vitek* does not say that the SVPA gave Grohs any Due Process liberty interest expectation of seven days' notice, hearing and opportunity to challenge commitment before the TCO hearing, and Grohs has not cited any Supreme Court precedent that does so. Thus, there was no Supreme Court authority as to which denial of the MTD could have been contrary or an unreasonable application.

**1. There Is No Clearly Established Supreme Court Precedent That The SVPA Creates A Protected Due Process Liberty Interest In Non-CEPP Committees**

Ground One turns upon whether there is any clearly established Supreme Court precedent that New Jersey's SVPA gave Grohs a constitutional Due Process liberty interest expectation of seven-day notice of the preliminary hearing on temporary civil commitment, of right to a hearing, and of opportunity to challenge his commitment prior to entry of the TCO. Grohs offers *Vitek v. Jones*, 445 U.S. 480 (1980) (ECF 3-1 at 15-16), but his reliance is misplaced.

In *Vitek*, "the threshold question [wa]s whether the involuntary transfer of a Nebraska state prisoner to a mental hospital implicate[d] a liberty interest that is protected by the Due Process Clause." *Vitek*, 445 U.S. at 487 (finding such interest existed, in the particular circumstances of that case). Grohs suggests *Vitek* directs that "due process requires notice prior to even a temporary involuntary commitment, absent some emergency justifying a post-deprivation hearing." (ECF 3-1 at 16.) However, Grohs overlooks the initial step of *Vitek*'s analysis: examining whether "the State grant[ed] a prisoner a right or expectation [in the first place] that adverse action will not be taken against him except upon the occurrence of specified behavior." *Vitek*, 445 U.S. at 490-91 ("requirements of procedural due process appropriate for the circumstances must be

observed . . . *if* the State grants a prisoner a right or expectation . . ") (emphasis added) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). *Vitek* sets forth no precedent for determining whether New Jersey law gave Grohs an expectation of seven days' notice of the TCO hearing, expectation of the right to a hearing, and expectation of opportunity to challenge his commitment before the TCO hearing, thereby creating a protected liberty interest for him. Grohs has not cited any Supreme Court case that does. The trial court's denial of Grohs' MTD cannot be contrary to, or an unreasonable application of, Supreme Court precedent that is not established in the first instance. 28 U.S.C. § 2254(d)(1).

      **2.**    **The Amended Petition At Best Alleges A Violation Of The SVPA. It Does Not Demonstrate That This Supposed State Law Violation Was Contrary To Supreme Court Precedent Giving Grohs A Due Process Liberty Interest Under The SVPA To Notice, A Hearing, And An Opportunity To Challenge Commitment.**

Ground One of the Amended Petition at best seeks relief purportedly arising from violation of the SVPA, but this Court cannot grant habeas relief for state law infractions.

Grohs argues that the Commitment Petition should have been dismissed because the TCO -- finding probable cause that he was a sexually violent predator -- was signed two days after it was filed. Grohs bases this argument on *M.G.*, in which individuals subject to the SVPA and incarcerated in a state psychiatric

15

facility were placed on Conditional Extension Pending Placement ("CEPP")[10] status, subject to the requirement that the State provide two weeks' notice prior to any commitment to an SVPA facility. On the State's appeal, the *M.G.* court decided "the narrow issue of whether an individual, who is either presently incarcerated or resident in a state psychiatric facility and on CEPP status, and who is subject to the SVPA, is entitled to notice prior to temporary commitment." *M.G.*, 751 A.2d at 1103. The Appellate Division held that the defendants had a procedural due process right to seven days' notice prior to any commitment to the SVPA facility because "[i]nvoluntarily committing individuals who are confined on CEPP status to a facility designated for SVPs [involves] ... loss of liberty." *M.G.*, 751 A.2d at 1108-09. The court found that the CEPP-status complainant was entitled to have seven days from receiving notice of the petition, in order to challenge the existence of probable cause before entry of the temporary commitment order. *Id.* at 386.

*M.G.* involved individuals committed to a state psychiatric facility and on CEPP status. Such persons *are* entitled to leave the non-SVP facility. *T.J.T.*, 2008 WL 313902 at *3 (discussing

---

[10] "CEPP status refers to a patient who is otherwise entitled to be discharged but who cannot be discharged immediately because an appropriate placement is unavailable." *M.G.*, 751 A.2d at 1103 n.1. (citing N.J. Ct. R. 4:74-7(h)(2)).

*M.G.*). Here, though, Grohs was *not* on CEPP status and was confined to South Woods State Prison at time of his temporary commitment; "[h]e was *not* free to leave." (ECF No. 3-1 at 14) (emphasis added). Under the logic of *M.G.*, this distinction is material to the issue of whether there is a liberty interest to trigger Due Process notice requirements because (as the *T.J.T.* panel stated): "[T]he notice requirement triggered under the facts of *M.G.* [i]s inapplicable to others committed under SVPA." *T.J.T.*, 2008 WL 313902, at *3. *M.G.* did *not* decide whether confinees not on CEPP status are entitled under SVPA to seven-days' notice of the preliminary temporary commitment hearing.

Subsequent to *M.G.*, the *T.J.T.* panel addressed appeal of a judgment continuing an STU commitment under SVPA. The court found that the notice requirement triggered under the facts of *M.G.* was inapplicable to others being committed under SVPA:

> T.J.T. incorrectly relies on N.J.S.A. 30:4-24.30[11] to support his argument that notice of the temporary commitment hearing is required. This statute requires notice only for the *final* commitment hearing, not the

---

[11] "At least 10 days prior to a court hearing, the Attorney General shall cause notice of the court hearing to be served upon the person, the person's guardian if any, the person's next-of-kin, the person's attorney, the agency with jurisdiction having custody of the person and any other individual specified by the court. The notice shall contain the date, time and location of the court hearing. The person and the person's attorney shall also receive copies of the clinical certificates for a sexually violent predator and supporting documents, the temporary court order and a statement of the person's rights at the court hearing." N.J. Stat. Ann. § 30:4-27.30(a).

> preliminary temporary commitment hearing.
> There is no other provision in the SVPA
> requiring notice to an incarcerated
> individual prior to a petition for
> involuntary commitment. Nothing in the
> legislative history indicates that the
> Legislature intended to require notice prior
> to presentation or execution of the
> temporary commitment order.
>
> In *M.G.*, we held only that the State must
> provide notice of a temporary commitment
> hearing to individuals in a state facility
> on CEPP status. *Id.* at 386. T.J.T. was not
> confined on CEPP status at a state
> psychiatric facility at the time of the
> preliminary temporary commitment and the
> requirement for the notice of the
> preliminary hearing was not required. He was
> entitled only to notice of the final
> hearing. N.J.S.A. 30:4-27.30 ⬚ .

*T.J.T.*, 2008 WL 313902, at *3.

Similar to the *T.J.T.* complainant, Grohs "was not confined on CEPP status at the time of the preliminary temporary commitment." 2009 WL 313902, at *3. And like the commitment at issue in *T.J.T.*, the February 24th TCO here was the *preliminary* temporary commitment order, not the *final* one. (ECF 9-4 at 30, 32) ("FURTHER ORDERED that Grohs shall not be permitted to appear at the final hearing without counsel ...[A] final hearing shall be conducted on March 18, 2011"). In such non-CEPP circumstances, the Appellate Division found that SVPA requires "only notice of the *final* hearing[,]" and "notice of the *preliminary* hearing was not required." *Id.* (emphasis added).

18

Thus, *M.G.* stands exclusively for the principle that an individual in a state psychiatric facility "*and* on CEPP status . . . is entitled to notice prior to temporary commitment." *M.G.*, 751 A.2d at 1103, 1108-09 (emphasis added). *T.J.T.* stands exclusively for the principle that SVPA "requires notice only for the *final* commitment hearing[,] not the preliminary temporary commitment hearing." *T.J.T.* 2008 WL 313902 at *3 (emphasis in original).

Contrary to Grohs' contention, then, neither *M.G.* nor *T.J.T.* conclusively suggest that there was an SVPA violation in this case.

Even if there was such violation, however, Grohs' right to habeas relief does not turn on such state law violation itself. Rather, Grohs' entitlement to a writ of habeas corpus depends on whether *Vitek* or other Supreme Court precedent have found that non-CEPP committees have an SVPA-based Due Process liberty interest in seven days' notice, hearing, and opportunity to challenge prior to the preliminary temporary commitment hearing.

*Vitek* does not stand for that principle. Grohs has not pointed to any federal precedent that does. Even if[12] the trial courts' actions in entering the TCO and denying the MTD were

---

[12] The Court's further discussion here of its ruling on Ground One is for illustration purposes only, and the Court makes no finding on the errors assigned by Grohs to the trial courts below.

incorrect under *M.G.*, *T.J.T.*, and the SVPA, those errors would not be a basis to provide the habeas remedy Grohs seeks. *See Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Moreover, Grohs has not, in any event, rebutted by clear and convincing evidence the presumption that Judge Geiger's (TCO, ECF 9-4 at 29-30) and Judge Freedman's (May 25 hearing transcript, ECF 9-3 at 10-15) probable cause findings are correct (*see* 28 U.S.C. § 2254(e)(1)).

For these reasons, Grohs' request for habeas relief on Ground One is denied.

**B.  Ground Two: Grohs' Challenges To The STU's Alleged Failure To Observe Proper Internal Procedures When Placing Him Into Sex Offender Specific Therapy**

In Ground Two, Grohs contends that the trial court erred when it "refused to consider Grohs' verbal motion to not attend sex offender specific therapy while Grohs' post conviction relief petition is pending." (ECF 3-1 at 18.) Grohs' motion had sought "review of the internal management procedures" of the STU (*id.* at 19, 20), under which Dr. Merrill Main, as the STU's Clinical Director, formulated the treatment refusal policy. Grohs argued that the policy placed him in the "untenable position to either discuss his criminal offense in a process group or be considered a treatment refuser." (*Id.*)

Judge Freedman declined to rule on Grohs' verbal motion at the May 25, 2012 hearing, with the court indicating that it does "not like interfering with the operations of th[e STU] unless it's ... something that really rises to the level of a constitutional issue. And [Dr. Main] is giv[ing Grohs] a reasonable alternative, which is just to go [to the sex offender specific process group] and [only] listen." (ECF 9-3 at 11; ECF 10 at 18-19.) This Court notes that, contrary to Grohs' contention that Judge Freedman "refused" to hear Grohs' argument on this point (ECF 3-1 at 18, 20), the record instead reflects that the trial court expressed its intent to do so at a later date: "I don't intend to do it today. We'll have to have a hearing. Then I'll make a ruling ... [The court will] find some time and we'll have a hearing on the issue." (ECF 9-3 at 29.)

Grohs' factual recitation aside, Grohs' complaint about the STU's institutional policies does not suggest a violation of the Constitution or any law or treaty of the United States. (ECF 3 at 8-9; ECF 3-1 at 18-21.) Ground Two does not identify any particular federal constitutional violation in connection with Judge Freedman's decision not to hear Grohs' STU policy-based motion on May 25. This point is dispositive of Amended Petition Ground Two. The contention that STU personnel did not observe proper procedures to put Grohs in treatment (ECF 3-1 at 18-20) is not a federal claim.

A habeas petition is the proper mechanism only if the inmate seeks to challenge the "fact or duration" of his confinement. *See Preiser v. Rodriguez*,411 U.S. 475, 494, 498-99 (1973) (stating that if a plaintiff is "attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release ... habeas corpus is not an appropriate or available federal remedy," and the attack should "be brought under the Civil Rights Act in federal court").

Even if Dr. Merrill's classification of Grohs under STU policy *could* affect the length of his confinement in the future (and this Court makes no finding in this Opinion as to whether it could or would), Grohs has not shown that it *will* in fact affect his order of confinement. Consequently, habeas relief is unavailable because "granting [the habeas] petition would [not] 'necessarily imply' a change to the fact ... of [his civil commitment]." *See Conover v. Main*, 601 F. App'x 112, 114-15 (3d Cir. 2015).

Furthermore, Ground Two also ignores the fact that Grohs had another avenue available to him: i.e., the STU had given Grohs "a reasonable alternative, which is just to go and listen." (ECF 9-3 at 11.)

All of Grohs' other arguments contesting internal STU policies are speculative, have no supporting facts in the

record, and must be rejected for this additional reason. (ECF 3-1 at 18-21) (STU's "therapeutic strategy is an 'all-or-nothing' approach which places residents in the untenable position of either potentially jeopardizing his criminal defense or being labeled a treatment refuser"). *See Doe v. Rodriguez*, No. 17-1709, 2018 WL 620898, at *9 (D.N.J. Jan. 1, 2018) ("this Court may dismiss summarily any habeas claim which fails to allege sufficient facts 'to raise a right to relief above the speculative level'") (citing Fed. R. Civ. P. 12(b)(6) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## V. <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. § 2253(c), Grohs may not appeal from a final order in this habeas proceeding where Grohs' detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A [habeas petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Grohs has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's

resolution of the claims, the Court shall deny Grohs a certificate of appealability.

## VI.   CONCLUSION

For the reasons stated above, the Amended Petition is denied. A certificate of appealability shall not issue.

An accompanying Order will be entered.


**March 27, 2018**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Judge